**David Joe KERNS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 52670 to 52673.**

Court of Criminal Appeals of Texas.

May 3, 1977.

Neal B. Wheeler, Dallas (Court-appointed on appeal), for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Robert E. Whaley and John Ovard, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ODOM, Judge.

Our opinion on original submission is withdrawn and the following is substituted in lieu thereof.

Appellant was convicted for the murder of four persons. He was assessed punishment at life imprisonment for each offense.

Appellant first asserts that the trial court committed reversible error when it failed to instruct the jury that Joseph Arnwine, a State witness, was an accomplice witness as a matter of law. Article 38.14, V.A.C.C.P., provides:

> "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The question of whether Arnwine was an accomplice witness was submitted as a fact issue to the jury. We, however, conclude that Arnwine was an accomplice witness as a matter of law and the court erred when it refused to so instruct the jury.

Appellant was convicted for murdering Betty Cannon, James Bradley Cannon, James Walker and Michelle Walmer. Arnwine was indicted for the murder of Betty Cannon. Arnwine, thus, was a co-indictee to the same offense as that committed by appellant and it was error for the court not to instruct the jury that he was an accomplice witness as a matter of law. *Creek v. State,* Tex.Cr.App., 533 S.W.2d 794; *McCloud v. State,* Tex.Cr.App., 527 S.W.2d 885; *Hendricks v. State,* Tex.Cr.App., 508 S.W.2d 633.

Arnwine's testimony and the record also compel us to conclude that he was an accomplice witness as a matter of law with regard to the other three offenses. He implicated himself in all of the offenses appellant was charged with committing. The State could have prosecuted him for all four murders. See, *Easter v. State,* Tex.Cr.App., 536 S.W.2d 223.

The question before us is whether the court's failure to instruct the jury that Arnwine was an accomplice witness as a matter of law constitutes reversible error. In *Gonzales v. State,* Tex.Cr.App., 441 S.W.2d 539, at 541–542, we stated:

"It appears from these cases that where the court submits to the jury the fact question of whether a certain State witness is an accomplice witness when the evidence was such as to justify a charge that such witness was an accomplice witness as a matter of law, and proper objection is reserved, the error does not require reversal unless the testimony of the witness is essential to the State's case (a) because, if the witness is in fact an accomplice, there is no evidence to corroborate his testimony, or (b) because, without the testimony of the witness . . . there is insufficient evidence to support a conviction or (c) be-cause it is the sole corroboration of the testimony of another accomplice." (Also see *Cranfil v. State,* Tex.Cr.App., 525 S.W.2d 518; *Bentley v. State,* Tex.Cr.App., 520 S.W.2d 390.)

We must ascertain whether there is sufficient evidence to support the convictions after Arnwine's testimony is excluded from consideration.

The offenses occurred in the early morning hours of April 27, 1974. Mitchell Penland testified that he went to appellant's apartment in the early evening of April 26, 1974, and that the appellant and Betty Cannon argued about appellant's relations with another woman. Penland left after this argument started.

He returned the next afternoon and saw a trail of blood leading from the parking lot up the apartment building's stairs to the appellant's residence, and blood smeared on the door of appellant's apartment. Inside he noticed bloodstains on the carpet and the wall. The appellant asked him to help clean up the apartment.

Two hours after Penland arrived at the apartment, the appellant stated: "Mitchell, I killed them. I killed them all," and, "Mitchell, I promise you no one suffered." Appellant also stated that he had shot them in the head with a .38 and that he dumped the bodies in a stream but that he did not have time to weight the bodies down. The appellant asked Penland to return to the stream and help him accomplish this task.

Other evidence established that three of the victims died from .38 caliber gunshot wounds to the head. Betty Cannon was killed by several shots in the left chest area.

Loretta Padgett, a half-sister of Arnwine, testified that she picked up appellant from the Interstate 30 bridge over Lake Ray Hubbard early on the morning of April 27 and drove him, accompanied by Arnwine, back to his apartment. The bodies surfaced near this point a few days later. One of the appellant's crutches was found washed ashore less than one mile north of this point, and the other crutch was found in his apartment.

A friend of Betty Cannon's testified that she phoned him at 2:30 on the morning of April 27 and told him she and appellant were fussing and fighting and asked him to bring a gun to the apartment. (We consider this not for the truth of the matter stated, but for the fact that such statements were made.) When he phoned back ten minutes later there was no answer.

■ We conclude that the evidence, excluding Arnwine's testimony, is sufficient to support the convictions. The physical evidence demonstrates that four murders occurred. There is evidence proving that some of the victims were killed in appellant's apartment. Appellant was seen, on the day of the offense, at the lake near where the bodies of the victims were discovered. Furthermore, appellant's statements to Penland are highly inculpatory. See, *McGilvery v. State*, Tex.Cr.App., 533 S.W.2d 24.

■ The failure of the trial court to instruct the jury that Arnwine was an accomplice witness as a matter of law did not result in reversible error. *Gonzales v. State*, supra. Appellant's contention on this matter and his assertion that Arnwine's testimony was not corroborated are overruled. We also overrule appellant's contention that the evidence is insufficient to support the findings of the jury.

■ Appellant complains that the trial court erred in failing to instruct the jury that Mitchell Penland, Loretta Padgett and Earl Watson were accomplice witnesses as a matter of law. He contends that he was entitled to this instruction because these witnesses helped Arnwine conceal the crime.

The record reflects that Penland attempted to wash the bloodstains from the areas around and in the appellant's residence. Padgett helped Arnwine dispose of his bloody clothes and the murder weapon. She also drove Arnwine back to the bridge in order that he might retrieve his truck which had run out of gas. Watson burned Arnwine's bloody clothes and threw the murder weapon into a creek. All of these

actions occurred after the victims were killed. None of these witnesses were aware of who was killed or who did the killing.

In *Easter v. State, supra*, we made the following statements:

"A witness is not deemed an accomplice witness because he or she knew of the crime but failed to disclose it or even concealed it." 536 S.W.2d at 225.

"And it appears to be well settled that one is not an accomplice witness who cannot be prosecuted for the offense with which the accused is charged." 536 S.W.2d at 227.

Penland, Padgett and Watson were not accomplice witnesses. They could not have been prosecuted for the murder of the four victims. *Easter v. State*, supra.

■ The tenth ground of error claims that the court allowed improper and prejudicial hearsay testimony to be admitted in evidence. Lee Thompson, a witness for the State, testified that Betty Cannon called him in the early morning hours of April 27, 1974, the date of the offenses. Cannon told him who was at the apartment, that one of appellant's friends had brought some guns to the residence and that she and appellant had been fighting.

Appellant's objection to Thompson's testimony at trial was that the State had failed to lay the proper predicate for introduction of this testimony. He did not object to the testimony on the ground that it was hearsay, as alleged in his brief on appeal. *Bouchillon v. State*, Tex.Cr.App., 540 S.W.2d 319; *Arivette v. State*, Tex.Cr.App., 513 S.W.2d 857.

Furthermore, the identities of the persons in the apartment on the day of the offenses, the fact that one of appellant's friends had brought guns to the residence, and the fact that Betty Cannon and appellant had been fighting were all established by other competent and admissible evidence which was not objected to. See, *Nicholas v. State*, Tex.Cr.App., 502 S.W.2d 169. No injury has been shown. *Myre v. State*, 545 S.W.2d 820 (1977); *Cunningham v. State*, Tex.Cr. App., 500 S.W.2d 820.

■ The eleventh ground of error asserts that the trial court erred in admitting prejudicial hearsay testimony from members of appellant's family. The part of the record objected to, however, contains no testimony from a member of appellant's family.

Appellant appears to be objecting to the following testimony entered by Loretta Padgett:

"He (Arnwine) told me, if anything ever happens to me, don't forget that boy, his name is David Kerns."

We perceive no reversible error in the admission of the testimony.

■ Appellant next complains that the trial court erred in permitting the State to introduce evidence tending to establish the good reputation of one of the victims, James Cannon. Anita Deason testified that James Cannon paid his mother's rent.

The objection to this testimony was sustained and the jury was instructed to disregard this statement. No further relief was requested. No adverse ruling was obtained and no reversible error is presented. *Hunter v. State,* Tex.Cr.App., 530 S.W.2d 573.

Staff Sergeant G. W. Pope testified that James Cannon was a good soldier. Appellant complains of this testimony on appeal, but he failed to object to it at trial. Error is not preserved for our review. Ground of error number twelve is overruled.

■ The thirteenth ground of error asserts error was committed by the following argument to the jury:

Prosecutor: ". . . you know, we could not call Blackie to that stand. But if Blackie, Donnie Horton had taken that stand and answered questions for those men and for me, you would know for certain whether or not Arnwine was lying or whether this man (appellant) was lying about who took that third body down those stairs."

Appellant's counsel: "Your Honor, I am going to object to the prosecutor arguing outside the record and anticipating testimony that does not exist."

Prosecutor: "I submit to you that Blackie was not called as a witness in this case by these men, (appellant and his counsel) who could have called him if they had wanted him in here—they sure didn't want him in here."

Appellant's counsel: "Judge, we're going to object to that on the grounds that he has the same subpoena power that this Defendant does. He could have brought him down here."

Prosecutor: "Ladies and gentlemen, that is not so. If we had subpoenaed Blackie down here and put him on the stand and asked him one question, he could have took the Fifth Amendment. This case would have automatically had reversible error, if I knew he was going to do that when I put him on there. You were told that in voir dire."

Appellant's counsel: "I'm going to object on the grounds that he is going outside the record because there is no evidence that Blackie would take the Fifth Amendment, if he did come down here."

■ The objections were overruled. In order to constitute reversible error, a jury argument must either be extreme or manifestly improper, or inject new and harmful facts into evidence. *Thomas v. State,* Tex. Cr.App., 519 S.W.2d 430; *Minter v. State,* Tex.Cr.App., 505 S.W.2d 581. We conclude that the prosecutor's argument does not constitute such error as would compel a reversal of these causes.

■ The State has the right to comment on an accused's failure to call competent and material witnesses, and this argument may be accompanied by an inference that the absent testimony would have been material and harmful to the defendant's position. *Fisher v. State,* Tex.Cr.App., 511 S.W.2d 506; *Winkle v. State,* Tex.Cr.App., 506 S.W.2d 891, cert. denied, 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71; *Simon v. State,* Tex.Cr.App., 406 S.W.2d 460.

We also observe that the argument did not inject any new evidence into the record. *Thomas v. State,* supra; *Minter v. State,* supra. Arnwine and the appellant both testified and contradicted each other's version of the offenses. Arnwine's testimony in-

cluded a statement that "Blackie" helped the appellant dispose of one of the victims. The prosecutor merely commented on the failure of the appellant to utilize "Blackie" as a witness. *Fisher v. State,* supra.

The comments concerning "Blackie's" potential assertion of his right against self-incrimination were made in response to appellant's objection. The prosecutor stated that "Blackie" "could have" asserted his Fifth Amendment protection, not that he "would have" used the Fifth Amendment protection as appellant states in his brief.

■ The discussion of whether a potential witness might have asserted his right to remain silent was collateral to the issues before the jury. Although objections are addressed to the judge and not the jury, and replies to objections likewise should not be addressed to the jury, we nevertheless conclude that the appellant was not prejudiced by the prosecutor's response. We overrule this ground of error.

The next ground of error asserts that the admission of certain photographs of the victims constitutes reversible error. This contention has no merit. The photographs were pertinent to the injuries received by the victims and also to the description of the location, Lake Ray Hubbard, where the bodies were recovered. See, *Vasquez v. State,* Tex.Cr.App., 532 S.W.2d 338; *Fazzino v. State,* Tex.Cr.App., 531 S.W.2d 818; *Brantley v. State,* Tex.Cr.App., 522 S.W.2d 519.

Ground of error fifteen states that the trial court erred when it overruled appellant's motion to take the deposition of Loretta Padgett. The record reflects, however, that the appellant did not secure an adverse ruling from the trial court on this motion. Indeed, he failed to secure any ruling from the trial court on this motion. Error is not preserved for our review. *Weir v. State,* Tex.Cr.App., 503 S.W.2d 571; *Torres v. State,* Tex.Cr.App., 491 S.W.2d 126. This ground of error is overruled.

■ Ground of error sixteen complains of a remark the prosecutor made during cross-examination of the appellant. Appellant was asked whether his attorneys were appointed or retained. After discovering that the attorneys were retained, he stated:

"Well, Betty Cannon didn't hire them (appellant's attorneys), we can be fairly sure of that."

The objection to this improper comment was promptly sustained and the prosecutor did not pursue the matter. No reversible error is shown.

■ Appellant also states that reversible error was committed when the prosecutor asked appellant if he were a pimp. The record reflects no objection to this question; therefore, error is not preserved. *Fazzino v. State,* supra; *Rich v. State,* Tex.Cr.App., 510 S.W.2d 596.

Furthermore, appellant stated that he had been convicted for pandering and that Betty Cannon, the woman he had lived with, was a prostitute. This ground of error is without merit.

The next ground of error asserts that a motion for mistrial should have been granted because of the following cross-examination of appellant's wife:

"Q. When did you talk to him (appellant) then next?

"A. It was on Tuesday morning.

"Q. You talked to him on Tuesday morning when he was arrested?

"A. No, before he was arrested.

"Q. Oh. Did he come over to your house?

"A. No, sir, he called me on the phone.

"Q. On Tuesday morning before he was arrested?

"A. Yes.

"Q. What did he say to you—be sure you tell this story—"

■ Appellant maintains that this statement implied that the appellant instructed his wife to tell a certain story to the authorities. Objection to this question was sustained and the jury was instructed to disregard the statement. The instruction to disregard was sufficient to cure any error. *Pringle v. State,* Tex.Cr.App., 511 S.W.2d 35.

■ Appellant's eighteenth contention claims that the trial court erred in allowing the State to bolster the testimony of Joseph Arnwine. Arnwine's testimony established that he thought he was going to be killed and that he was relieved to have been imprisoned in a single cell in the jail.

Carl Rowland, the chief jailer at the Dallas County Jail, testified in the following manner:

"Q. Would you tell this jury whether or not Joe Arnwine has been kept in a single cell secluded and away from other prisoners?

"A. That is true. He has been ever since he's been in the Dallas County Jail.

"Q. For what reasons has that been done?

"A. The word—

"Q. No, not the word. Don't say the word."

Appellant's counsel: "Your Honor, at this time we would object to this witness testifying on the grounds that it is not proper rebuttal and an attempt to bolster the State's witness, Arnwine."

The court overruled this objection. This testimony, however, did not bolster the evidence introduced by Arnwine.

Appellant also contends that another State witness, Charles Franklin, bolstered the testimony of Arnwine. No objection, however, was made to Franklin's testimony on this basis.

The following contentions arise from appellant's motion for new trial and the hearing held thereon.

■ Appellant claims that he was denied due process of law and compulsory process because the State was responsible for the nonattendance of a material witness, Joseph Arnwine, at the hearing held on the motion for new trial. Arnwine was released on personal bond. He was subpoenaed by the trial court for purposes of the hearing. The subpoena, however, was returned unserved because Arnwine had left town.

The record reflects that the State was not responsible for Arnwine's failure to appear at the hearing held on the motion for new trial. Compare, *White v. State,* Tex.Cr. App., 517 S.W.2d 543.

Hearsay evidence was introduced by the appellant to show that the prosecutor had advised Arnwine that Dallas was not a safe town and he should leave.[1] But, the record also demonstrates that the prosecutor instructed Arnwine to inform the State of his whereabouts so that he could make the necessary court appearances. Arnwine failed to do this.

Appellant has not established that Arnwine's failure to appear was brought about by improper action attributable to the State. *White v. State,* supra. The nineteenth ground of error is overruled.

■ The next ground of error also concerns Arnwine's failure to attend the hearing held on appellant's motion for new trial. Appellant insists that his motion for continuance made at the hearing should have been granted because of the failure to secure the attendance of Arnwine.

After hearing argument and reviewing the appellant's affidavits, the court denied the motion for continuance. The judge stated that he denied the motion because there was nothing in the record before him to demonstrate or indicate when the attendance of Arnwine could be secured. No one knew where Arnwine was located, nor did anyone know how to contact him.

The trial court did not abuse its discretion in denying the motion for continuance. The court reached its conclusion only after it reviewed the circumstances before it and determined that a continuance would not aid in securing Arnwine's attendance. We will not disturb the findings of the trial court on this issue. Cf. *Chance v. State,*

1. It appears from the record that Arnwine was involved with certain "underworld" figures in Dallas. He was fearful of them due to his participation in the events surrounding the offenses committed in the case at bar. The record also demonstrates that there was a "contract" out on Arnwine's life.

Tex.Cr.App., 528 S.W.2d 605. We overrule this ground of error.

The final ground of error argues that the trial court erred when it failed to grant appellant's amended motion for new trial based upon the newly discovered evidence that Arnwine had been rewarded for entering evidence against the appellant. Arnwine was rewarded, according to appellant, because he did not have to post a cash bond in order to be released from custody.

At the hearing held on the motion for new trial both the prosecutor and Arnwine's attorney testified that no "deal" had been made with Arnwine. This testimony was undisputed. No material evidence, therefore, was suppressed from the jury during the trial.

Appellant has failed to establish his allegations. The mere fact that Arnwine was released on personal bond would not have brought about a different verdict at a new trial. See, *Hayles v. State,* Tex.Cr.App., 507 S.W.2d 213. The final ground of error is overruled.

The judgments are affirmed.